Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
OBER & PEKAS, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel F. Messersmith, a married man, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| JPMorgan Chase Long-Term Disability Plan, an ERISA benefit plan; The Prudential Insurance Company of America, a plan fiduciary; and JPMorgan Chase Bank, N.A., a plan administrator, | |
| Defendants. | |

For his claims against JPMorgan Chase Long-Term Disability Plan (the "Plan"), The Prudential Insurance Company of America ("Prudential"), and JPMorgan Chase Bank ("JPMorgan") (collectively "Defendants"), Plaintiff Daniel F. Messersmith ("Mr. Messersmith" or "Plaintiff") alleges as follows:

*Jurisdiction, Venue And Parties*

1.     This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2.     JPMorgan maintains a Health Care and Insurance Program for Active Employees (the "Program"), which is made up of separate benefit plans and programs.

3.     The Program incorporates by reference summary plan descriptions ("SPDs") for each benefit plan that is part of the Program and insurance policies purchased to provide benefits under any benefit plan, but notes that if the Program's terms conflict with an SPD or insurance policy the terms of the SPD or insurance policy will apply.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

4.      *Cigna v. Amara,* 131 S. Ct. 1866, 1868-69 (2011), however, explains that plan terms cannot be set in SPDs.

5.      The Program defines "Claims Administrator" as the agent who determines the validity of claims and administers benefit payments under a plan.

6.      The Program defines "Committee" to include the JPMorgan Chase Health Care and Insurance Plans Appeals Committee.

7.      The Program provides for the creation of a "Committee" to hear benefit claims and appeals.

8.      The Program defines "Plan Administrator" for each plan as the agent designated as the Plan Administrator in the applicable SPD.

9.      The Program defines "Program Administrator" as the Compensation and Benefits Executive or its delegate.

10.     The Program makes the Program Administrator the named fiduciary of the Program and each Plan Administrator and Claims Administrator a fiduciary of their respective plans.

11.     The Program provides that benefits under a plan will only be paid if the Plan Administrator or its delegate decides in its discretion that a participant is entitled to the benefits.

12.     The Program provides that a Plan Administrator may delegate its authority to make benefit determinations to the Committee or on one or more Claims Administrators.

13.     The Plan is a purported ERISA benefit plan established and maintained by JPMorgan for the benefit of its employees.

14.     The Plan is one of the benefit plans that make up the Program.

15.     JPMorgan is the Plan Administrator, Plan Sponsor, Employer, and a Plan fiduciary.

16.     At all relevant times, Prudential administered claims for JPMorgan under the Plan, acted on behalf of the Plan, and acted as an agent for JPMorgan.

17.     Prudential is a third-party claims administrator for the Plan.

18.     Prudential is a Plan fiduciary.

19.     Prudential fully insures LTD benefits under the Plan with a Policy, Group Contract Number G-50684-DE (the "Policy").

20.     The SPD for the Plan identifies Prudential as a Claims Administrator.

21.     Mr. Messersmith was a participant and beneficiary of the Plan as an employee of JPMorgan.

22.     Mr. Messersmith is a married man and currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

23.     The Plan and JPMorgan, have their principal place of business in the state of New York.

24.     Prudential has its principal place of business in the state of New Jersey.

25.     Defendants Prudential and JPMorgan are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

26.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

27.     Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

28.     JPMorgan and Prudential have a duty to administer the Plan prudently and in the best interest of all Plan participants and beneficiaries.

29.     The Plan's SPD states:

> No person or group, other than the Plan Administrator for the JPMorgan Chase U.S. Benefits Program, has any authority to interpret the LTD Plan (or official plan documents) or to make any promises to you about them. The Plan Administrator for the JPMorgan Chase U.S. Benefits Program has complete authority in his or her sole and absolute discretion to construe and interpret the terms of the LTD Plan and any underlying policies and/or contracts, including the eligibility to participate in the plan. All decisions of the Plan Administrator for the JPMorgan Chase U.S. Benefits Program are final and binding upon all affected parties.

-3-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

30.     The "Plan Administration" section of the SPD for the Benefit Guide states:

No person or group, other than the Plan Administrators for the JPMorgan Chase U.S. Benefits Program has any authority to interpret the plans listed in *Your Guide to Benefits at JPMorgan Chase* (or official plan documents) or to make any promises to you about them. The Plan Administrators for the JPMorgan Chase U.S. Benefits Program have complete authority in their sole and absolute discretion to construe and interpret the terms of the plans and any underlying policies and/or contracts, including eligibility to participate in the plans.

All decisions of the Plan Administrators for the JPMorgan Chase U.S. Benefits Program, or their delegates, are final and binding upon all affected parties. The Plan Administrators have delegated their discretion to decide claims and appeals to the claims administrators and to the Heath and Income Protection Plans Appeals Committee and the Short-Term Disability Plan Appeals Committee, as described in this Guide.

31.     The SPD does not purport to have delegated the Plan Administrator's discretion to interpret the Plan to claims administrators.

32.     Prudential's Policy contradicts the SPD when it states:

[Prudential] as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

33.     The Plan does not unambiguously confer to Prudential the discretionary authority to interpret the Plan and to make eligibility determinations regarding the Plan.

34.     Prudential acted under a structural conflict of interest in both administering and paying out on claims under the Plan.

35.     Prudential should not be entitled to any deference in its decision-making in light of the facts and circumstances of this claim.

36.     Mr. Messersmith is entitled to *de novo* review of his claims, because Prudential lacked discretionary authority or due to Prudential's structural conflict of interest and wholesale and flagrant violations of the procedural requirements of ERISA."

## GENERAL ALLEGATIONS

37.     Due to worsening medical conditions, Mr. Messersmith stopped working and applied for short-term disability ("STD") benefits on October 27, 2014.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

38.     Mr. Messersmith received STD payments for the maximum allotted time; however, Prudential denied his LTD claim on May 1, 2015.

39.     Believing that he had no other option, Mr. Messersmith tried to return to work on June 1, 2015.

40.     Mr. Messersmith could only withstand being back at work for approximately three months.

41.     During those three months, he struggled to maintain a consistent, full-time schedule, but was routinely late and left early due to neck and back pain, as well as unpredictable gastrointestinal issues.

42.     Part of Mr. Messersmith's earnings is commissions based on completed loan applications.

43.     Mr. Messersmith struggled to meet work demands and ultimately had to accept that he could not sustain work and left work for a second time on September 10, 2015.

44.     Mr. Messersmith suffered a greater than 20% loss of income when he tried to return to work because he completed only one loan application within ninety days.

45.     Mr. Messersmith normally would have completed eighteen to twenty applications in one month.

46.     After leaving work on September 10, 2015, Mr. Messersmith again received maximum STD benefits for his medical conditions.

47.     Despite Prudential twice having been found to be entitled to STD benefits, and a March 15, 2106 claim file note stating "std forms support [out of work] indefinitely," on April 27, 2016, Prudential denied Mr. Messersmith's LTD benefits for his alleged failure to meet the definition of "Disability" under the Plan (the "Denial").

### *Mr. Messersmith's Disability*
### *Back, Neck and Bowel Conditions*

48.     Mr. Messersmith suffers from significant cervical and lumbar spine and degenerative disc disease ("DDD").

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

49.     Mr. Messersmith's symptoms include severe neck and lower back pain with decreased range of motion, as well as intermittent radicular pain and weakness in his legs.

50.     Mr. Messersmith also has severe headaches that radiate from his neck to the occipital area of his head.

51.     The medical evidence and treating provider opinions support Mr. Messersmith's reported symptomology and limitations.

52.     Despite treatment, Mr. Messersmith's neck and back pain have progressively worsened to the point where he can no longer sustain any type of work.

53.     Mr. Messersmith worked through the pain for many years until he could no longer sustain work due to his pain and other symptoms.

54.     The objective medical evidence substantiates Mr. Messersmith's complaints.

55.     Mr. Messersmith consulted with an orthopedic physician, Dr. Robert Waldrip, regarding his neck and back pain.

56.     Based on objective testing, Dr. Waldrip diagnosed *significant* and diffuse patterns of degenerative disk disease at multiple levels and provided treatment to Mr. Messersmith throughout 2014-2016.

57.     Mr. Messersmith's treating physicians' objective findings are consistent with his reported complaints of neck and back pain.

58.     Mr. Messersmith has undergone multiple sessions of physical therapy, received several cervical and lumbar injections, and tried various medications for pain.

59.     Unfortunately, these treatment modalities have offered little relief as explained by his treating providers.

60.     Mr. Messersmith reports minimal relief from his medications.

61.     Mr. Messersmith has undergone multiple procedures throughout 2014-2016, including various ablations, injections, and nerve blocks.

62.     Because Mr. Messersmith had not responded to appropriate conservative treatment related to his lumbar issues throughout 2014-2016, another lumbar MRI was ordered to investigate the cause and explore future treatment modalities.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

63.     On July 25, 2016 a lumbar MRI revealed multi-level degenerative issues consistent with past objective testing and explaining his symptoms.

64.     Mr. Messersmith's complaints are well documented, substantiated, and unlikely to improve.

65.     Prudential does not dispute that Mr. Messersmith suffers from back and neck pain or that the pain imposes restrictions or limitations, but disputes that the restrictions and limitations prevent full-time work.

66.     Prudential's restrictions and limitations did not include consideration of his other health conditions, which are debilitating.

67.     On February 25, 2016 Mr. Messersmith underwent an FCE with Stephanie Nguyen, PT, DPT per Dr. Kramer's request to better understand his functional limitations.

68.     Ms. Nguyen concluded that, Mr. Messersmith's "physical abilities do not match job requirements at this time. Return to work is not feasible."

69.     Ms. Nguyen further concluded:

 [Mr. Messersmith's] limitations with prolonged sitting, standing and walking will interfere with his ability to perform all job duties. [His bowel issues] will also interfere with his ability to maintain scheduled appointments, client phone calls and [a] daily schedule.

70.     Ms. Nguyen notes that, "[a]lthough he cannot tolerate prolonged activities, he has the ability to be efficient in short periods of time: Sitting 30 minutes at a time, standing/walking <20 minutes at a time."

71.      Ms. Nguyen identified potential, significant barriers to Mr. Messersmith's return to work.

72.     Ms. Nguyen's assessment is significant, because she conducted 4 hours of testing, which gave her a considerable amount of time to familiarize herself with Mr. Messersmith's limitations and restrictions.

73.     During Ms. Nguyen's physical examination of Mr. Messersmith, Ms. Nguyen noted a reduced range of motion in the cervical spine, reduced muscle strength, and decreased L4-S1 on the left lower extremity.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

74.     Ms. Nguyen reports that during the 4 hours, Mr. Messersmith required 5 bathroom breaks with the longest duration being 23 minutes and the shortest duration being 5 minutes.

75.     Ms. Nguyen's concluded:

> [Mr. Messersmith] was very cooperative for all testing despite elevated pain levels and movement limitations. [Mr. Messersmith] participated in most activities but limited some activities prior to objective signs of maximal performance due to reports of cervical and lumbar pain which are consistent with [his] diagnosis, medical history and impairments." Ms. Nguyen further notes that, "[Mr. Messersmith gave maximal effort on most test items as evidence by predictable patterns of movement including increased accessory muscle recruitment, counterbalancing and use of momentum.

76.     Mr. Messersmith has a functional bowel disorder that requires him to be near a toilet all the time.

77.     Mr. Messersmith has symptoms of frequent, unpredictable, urgent bowel movements ("BM's") requiring frequent and extended time in the bathroom.

### Plan Language

78.     To be eligible for LTD benefits, during the first 24 months of disability, Mr. Messersmith must be "unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury; and [be] under the regular care of a doctor; and have a 20% or more loss in [his] monthly earnings due to that sickness or injury."

79.     The Plan defines "Material and substantial duties" as those "normally required for the performance of [Mr. McMessersmith's] regular occupation; and cannot be reasonably omitted or modified."

80.     The Plan defines "Regular Occupation" as "the occupation [Mr. Messersmith] is routinely performing when [his] disability begins . . . as it is normally performed instead of how the work tasks are performed for a specific employer at a specific location."

81.     To be eligible for LTD benefits after 24 months, Mr. Messersmith must be "unable to perform the duties of any gainful occupation for which [he is] reasonably fitted

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

by education, training or experience; and [he is] under the regular care of a doctor" due to the same sickness or injury.

82.     The Plan defines "Gainful occupation" as "an occupation, including self employment, that is or can be expected to provide [Mr. Messersmith] with an income within 12 months or [his] return to work, that exceeds . . . 60% of [his] monthly earnings, if [he is] not working."

83.     Under the Plan, Mr. Messersmith could be entitled to LTD benefits until sixty-five (65) years of age.

84.     Mr. Messersmith is entitled to a monthly disability benefit equal to 60% of his monthly pre-disability earnings less any applicable offsets.

85.     Under the terms of the Plan, if a participant, who tries to return to work after receiving benefits under the Plan, is still eligible for coverage, and becomes disabled again due to the same or a related illness or injury within six months after the return to work, benefits under the Plan resume immediately.

86.     Under the terms of the Plan, if the participants becomes disabled again after more than six months or due to a different or unrelated illness or injury, he must satisfy a new elimination period before receiving benefits under the Plan.

*Mr. Messersmith's Functional Capacity*

87.     In an effort to better understand Mr. Messersmith's vocational capabilities, Mark Kelman, MS, CRC, CVE conducted a vocational analysis on October 14, 2016.

88.     In his report dated October 24, 2016, Mr. Kelman concluded that "the totality of medical information to include bowel along with musculoskeletal issues and symptomology would preclude Mr. Messersmith from all employment."

89.     Mr. Kelman further concluded:

➤   [F]requent . . . bathroom visits . . . would have a severe impact on maintaining employment because the bathroom visits would require suspending customer interviews without notice for 40 minutes to 2 hours to go to the bathroom;

➤   The need to stay in a bathroom for upwards of 2 hours negates all employment even if a bathroom is in close proximity;

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

➢ Mr. Messersmith's regular occupation require ongoing and frequent interaction with co-workers and the public which is not compatible with urgent and frequent or prolonged bathrooms stays;

➢ The residuals of his pain medication and ongoing cervical and head pain coupled with urgent bowel movements preclude all work even at the sedentary level;

➢ Proof that Mr. Messersmith cannot perform his regular occupation is that when tried to return to work after short-term disability, he completed one loan application within ninety days, though he normally would have completed 18 to twenty applications every month.

➢ Based on a sampling of local employers of Loan/Mortgage Officers, Mr. Messersmith cannot maintain a competitive level of performance;

90.     Mr. Messersmith is Disabled from a medical standpoint and a vocational standpoint.

## *Mr. Messersmith's Employment*

91.     JPMorgan employed Mr. Messersmith as a Retail Mortgage Banker.

92.     JPMorgan provided a job description for Retail Mortgage Banker that includes the following:

You will be required to deliver strong results in mortgage and home lending products, and demonstrate strong interpersonal skills as well as provide exceptional service throughout the sales process. You will serve as customer's chief point of contact with Chase throughout the life of the loan.

You will also be responsible for serving as the mortgage lending specialist at the branch by coaching and mentoring the branch team and providing training on products and services. You will work hand-in-hand with bankers, meeting with their customers and introducing new clients to bankers for additional products and services.

### Minimum Qualifications:

• Minimum three years of mortgage lending, proven sales experience in retail banking required

• Bachelor's degree or equivalent work experience in sales and/or real estate required

• Marketing, promoting, relationship building and consulting skills required

• Intermediate PC skills in a Windows environment required

• FHA/VA sales experience preferred

• Excellent written and oral communication skills

• Knowledge of real estate market in local area

• Knowledge of FHA, VA, FNMA, and FHLMC guidelines

• Internal: Ability to develop a strong partnership with the assigned retail branches to Promote mortgage loan originations (in footprint territories),

-10-

and can function well within formal and dotted-line reporting relationships

• External (Customer): Build role as the internal and external mortgage expert; builds and maintains good relationships with customers; and exhibits consultative skills to provide recommendations based on financial analysis and expertise, product knowledge, and knowledge of the customer's financial needs, goals, and circumstances

### *Mr. Messersmith's Document Requests*

93.     On June 15, 2016, Mr. Messersmith requested a copy of his "full administrative file."

94.     On August 4, 2016, Mr. Messersmith requested copies of plan documents and "relevant documents" as defined in 29 C.F.R. § 2560.503-1(m)(8) from Prudential.

95.     On September 1, 2016, Mr. Messersmith requested copies of plan documents and "relevant documents" as defined in 29 C.F.R. § 2560.503-1(m)(8) from JP Morgan

96.     Under 29 C.F.R. § 2560.503-1(h)(2)(iii), plans are required to provide copies of all relevant documents as defined in 29 C.F.R. § 2560.503-1(m)(8), which include any document: "relied upon in making the benefit determination;" "submitted, considered, or generated in the course of making the benefits determination" whether or not relied upon in making the benefit determination; that "demonstrates compliance with the administrative processes and safeguards required [by the regulations] in making the benefit determination;" or that "constitutes a statement of policy or guidance with respect to the plan concerning . . . the denied benefit," whether or not it was relied upon in the making the benefit determination.

97.     All of the documents Mr. Messersmith requested fall within the scope of "relevant" documents as defined by the regulation and remain the responsibility of the plan to produce. "Administrators must now turn over, on request, the documents 'generated in the course of making the benefit determination.'" *Sgro v. Danone Waters of N. Am., Inc.,* 532 F.3d 949, 945 (9th Cir. 2008) (quoting Fed. Reg. 70246, 70271 (Nov. 21, 2000)). When a third party makes the benefit determination, "the administrator may not have the needed documents on had, so it will have to get them from the third party." *Id.*

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

98.     Prudential has sanitized its claim file disclosure and, in doing so, omitted numerous relevant documents.

99.     JPMorgan Chase is responsible for Prudential's lack of disclosure under ERISA, which has prejudiced Mr. Messersmith's ability to prepare his Appeal and perfect his claim.

*Prudential's Incomplete Response To Mr. Messersmith's Document Requests*

100.    Missing from the claim file are the records of Mr. Messersmith's 2015 LTD claim, as well as his most recent STD claim. Prudential liberally referenced information from these claims in preparing its Denial. For example, In a May 29, 2016 internal note, Prudential stated "[m]ost medical in file is 2015 related to prior claim." This includes Dr. Kanner's 2015 medical records and Dr. Waldrip's 2014 medical records, which were relied upon in the Denial but not disclosed. As further example, a March 21, 2016 internal note by Amy Small, states: "[mental/nervous limitation] coded as not applied – prior claim notes depression and anxiety with therapy and meds. . . Prior claim with [date of disability] 10/27/14 was denied in May 2015. . . Prior claim for [gastrointestinal] issues. . . No [employer] email with [job description] in prior claim."

101.    Because Prudential relied on the files in the referenced in the preceding paragraph, the files should have been disclosed in response to Mr. Messersmith's request for copies of relevant documents.

102.    Prudential's internal notes are littered with acronyms that are not easily decipherable, but Prudential failed to disclose an explanation of all acronyms used in the administration of Mr. Messersmith's claim per our request.

103.    Prudential's practice of holding "claims discussions" but failing to maintain thorough notes during those discussions circumvents ERISA and frustrates a full development of the administrative record.

104.    Prudential further failed to disclose Thomas McDow, RN's March 28, 2016 review and opinion, yet Dr. Jonathan Mittelman relied on this information in his medical review. The Denial relies on Dr. Mittelman's opinion.

105.   Mr. McDow developed his opinion during a Capacity/Clinical Review on March 28, 2016 attended by Angi Holland, Laura Pope, and Amy Small. The internal notes, however, do not include all of the notes of this meeting.

106.   The Denial largely relied on the opinion of Prudential's Dr. Mittelman.

107.   In his April 5, 2016 report, Dr. Mittelman opines that, "[t]he claimant's self-reported complaints . . . do not rise to a level that would limit him from sustainable activity and would require, other than proximity to a bathroom, any medically necessary restrictions."

108.   Dr. Mittelman further opines limitations and restrictions of frequent ability to stand/walk, lift/carry up to 20 pounds, and constant use of the upper extremities without working at or over the level of his shoulders.

109.   Dr. Mittelman's opinion is arbitrary and against the clear weight of the medical evidence.

110.   Dr. Mittelman is the Vice President and Medical Director of Prudential.

111.   Dr. Mittelman did not examine Mr. Messersmith.

112.   Dr. Mittelman does not possess the requisite qualifications to effectively comment on Mr. Messersmith's disabling conditions; yet, he disagreed with the opinions of Mr. Messersmith's examining specialists.

113.   Dr. Mittelman ignored and overlooked critical parts of Mr. Messersmith's medical records, misrepresented the medical evidence, and undermined the severity of his conditions.

114.   In its Denial, Prudential failed to explain why it credited its medical reviewer over Mr. Messersmith's treating providers and unreasonably relied on Dr. Mittelman's assessment when it knew or should have known that he conducted an inadequate and biased review.

115.   A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

-13-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

116.    Dr. Mittelman has a direct financial incentive to deny Mr. Messersmith's claim, and that conflict of interest further degrades the validity of his opinion.

117.    In denying Mr. Messersmith's benefits, Prudential ignored the fact that it had already found him Disabled from his Regular Occupation by approving STD benefits.

118.    Mr. Messersmith's conditions did not change or improve.

119.    To find that he was capable of his Regular Occupation when the medical evidence had not changed is both illogical and in direct conflict with Prudential's prior findings.

120.    Having previously found Mr. Messersmith entitled to benefits, the burden on Prudential to justify a denial of benefits is higher. *See, e.g. Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 871 (9th Cir. 2008) (rejecting argument that no "progression of degeneration" justifies termination of benefits because "in order to find [plaintiff] no longer disabled, one would expect the [evidence] to show an *improvement*.") (emphasis in original). "[W]hen determining whether Defendants abused their discretion in terminating Plaintiff's benefits, the Court necessarily will consider the record as a whole including whether Plaintiff's condition improved or substantially changed between the time Defendants initially deemed he eligible for benefits and the time Defendants reversed their decision." *Robertson v. Standard Ins. Co.,* ___ F. Supp. 2d ___, No. 3:14-cv-01572-HZ, 2015 WL 5766923 *10 (D. Or. Sept. 30, 2015) ((quoting *Torres v. Reliance Standard Ins. Co.,* No. 07-CV-202-BR, 2010 WL 276074, at *8 (D. Or. Jan. 15, 2010); *McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 589 (8th Cir. 2002) ("unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments.")).

121.    Prudential has the burden of explaining how Mr. Messersmith's impairment or clinical picture has changed to the point that benefits are no longer payable, or how the definitions of STD and LTD benefits result in different outcomes.

122.    The only aspect of the claim that changed was how benefits were being funded.

-14-

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

123.   Of significance, the STD benefits are presumably self-funded by JPMorgan, meaning Prudential has no financial liability in approving STD benefits.

124.   However, the LTD benefits are fully insured by Prudential, and it has a significant financial incentive to deny the LTD benefits under this structural conflict of interest.

125.   This conflict has seemingly improperly influenced Prudential's decision-making.

126.   Prudential has not presented evidence that it has taken efforts to mitigate the effect of its conflict of interest on its decision-making for this claim, despite a request that this information be provided.

127.   Mr. Messersmith cannot perform the material duties of his/her Regular Occupation or Any Occupation and therefore comes within the definition of Disability under the Plan.

128.   Mr. Messersmith exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants Prudential and the Plan)**

129.   All other paragraphs are incorporated by reference.

130.   The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

131.   The Plan represents LTD coverage and a promise to provide LTD benefits until Mr. Messersmith is no longer Disabled under the terms of the Plan.

132.   Mr. Messersmith continues to be Disabled for his/her Own Occupation and Any Occupation.

133.   Mr. Messersmith has twice applied for and claimed the benefits under the Plan to which he is entitled.

134.   Prudential treated the second application as a separate disability rather than a continuing disability as required by the terms of the plan.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

135.    Having found Mr. Messersmith disabled from October 27, 2014 for six months and from September 10, 2015 for six more months after a failed attempt to return to work, Prudential should have found him continuously disabled since October 27, 2014 and entitled to LTD benefits at the end of the first STD period.

136.    Under the terms of the Plan, Prudential should have continued LTD benefits, offset for his reduced earnings, during Mr. Messersmith's failed attempt to return to work.

137.    Mr. Messersmith reasonably expected that his/her medical conditions met the requirements of Disability as defined by the Plan and that he/she would receive benefits under the Plan until he/she reaches his/her Social Security Normal Retirement Age or until he was no longer disabled.

138.    Despite the coverage of Mr. Messersmith's Disability, Prudential and the Plan improperly terminated his LTD benefits in breach of the Plan and ERISA.

139.    Prudential's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

140.    In order for Prudential to have discretion with respect to claims and appeals, or to interpret the Plan, under ERISA: the Plan must reserve that discretion to the Plan Administrator; the Plan must provide a mechanism for the Plan Administrator to delegate that discretion; and there must be evidence that the discretion was delegated in accordance with the terms of the Plan.

141.    On information and belief, the Plan: does not reserve discretion to the Plan Administrator, does not contain terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Prudential.

142.    Even if JPMorgan properly delegated discretionary authority to Prudential, in light of Prudential's substantial deviation from ERISA's procedural requirements, Mr. Messersmith should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established

procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

143.     Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Messersmith is informed and believes that Prudential makes claims decisions based on the claims resources and financial risk it faces on certain claims.

144.     Prudential wrongfully denied Mr. Messersmith's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

145.     Prudential did not properly consider all of the available evidence when terminating Mr. Messersmith's benefits.

146.     Prudential failed to conduct a full and fair review.

147.     Prudential misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviews provided by in-house medical consultants.

148.     Prudential relied on findings that constitute "clearly erroneous findings of fact" to deny Mr. Messersmith's benefits.

149.     Prudential abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Prudential ignored the inaccuracies or created new reasons for denial.

150.     Prudential tainted its medical file reviewers by giving the reviewers inaccurate information regarding Mr. Messersmith, while also failing to provide its reviewers with all of the relevant evidence.

151.     Upon information and belief, Prudential provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

152.     Upon information and belief, Prudential did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Mr.

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-17-

1   Messersmith's administrative appeals process, or at least used employees who were managed

2   by the same person(s) and who were orchestrating the denial according to Claim Discussion

3   directives. *See 29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide

4   for a review that does not afford deference to the initial adverse benefit determination and

5   that is conducted by an appropriate named fiduciary of the plan who is neither the

6   individual who made the adverse benefit determination that is the subject of the appeal, nor

7   the subordinate of such individual.").

8       153.   Prudential routinely emphasizes information that favors a denial of benefits

9   while deemphasizing other information that suggests a contrary conclusion.

10      154.   Prudential and JPMorgan unreasonably withheld relevant documents

11  throughout the entire claim and poorly managed the file, which is evidenced, in part, by its

12  repeated failure to provide all relevant documents.

13      155.   Prudential and JPMorgan's failure to comply with ERISA's disclosure

14  requirements and poor management of the file demonstrates its abuse of discretion and

15  improper claims handling.

16      156.   Prudential failed to properly consider the opinions of Mr. Messersmith's

17  treating and examining physicians.

18      157.   In terminating Mr. Messersmith's LTD benefits, Prudential completely

19  disregarded evidence that Mr. Messersmith's conditions had not changed or improved.

20      158.   Prudential has no evidence that Mr. Messersmith's conditions changed or

21  improved since it determined that he met the definition of Disabled in the Policy.

22      159.   Upon information and belief, Prudential used in-house reviewers in

23  evaluating Mr. Messersmith's claim, because it knew that the in-house reviewers'

24  recommendations would be unfavorable for the continuation of Mr. Messersmith's benefits.

25      160.   The peer reviewers arbitrarily reached their opinions based on insufficient

26  evidence or investigation.

27      161.   None of Prudential's reviewing physicians ever set forth any substantive

28  reasons why Mr. Messersmith's treating doctors' opinions were incorrect.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-18-

162.    Prudential failed to explain why it credited the physician reviewers over Mr. Messersmith's treating physicians.

163.    The peer reviewers were not given the Plan or other important records for reaching its decision that Mr. Messersmith could perform work.

164.    Prudential engaged in other procedural irregularities, which it did to serve its own financial best interests.

165.    On information and belief, Prudential engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

166.    Prudential intentionally gathered evidence to stack the deck in its favor and against Mr. Messersmith.

167.    Mr. Messersmith alleges upon information and belief that Prudential has a parsimonious claims handling history.

168.    Prudential failed to conduct a "meaningful dialogue" regarding Mr. Messersmith's claim.

169.    Under the *de novo* standard of review, to be entitled to benefits Mr. Messersmith need only prove by a preponderance of the evidence that he is Disabled.

170.    Even under the abuse of discretion standard of review, Prudential abused its discretion, because its decision terminating Mr. Messersmith's disability benefits was arbitrary and capricious and caused or influenced by Prudential's, its reviewing physicians, and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

171.    Mr. Messersmith is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Prudential's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Messersmith's LTD claim.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-19-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

172. Under the *de novo* standard of review, Mr. Messersmith is entitled to discovery regarding, among other things, the credibility of Prudential's medical reviews and Prudential's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

173. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Messersmith is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

174. Mr. Messersmith is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

175. Pursuant to 29 U.S.C. § 1132(g), Mr. Messersmith is entitled to recover his attorneys' fees and costs incurred herein.

176. Mr. Messersmith is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

## COUNT II
### (Breach of Fiduciary Duty)
### (Prudential and JPMorgan)

177. All other paragraphs are incorporated by reference.

178. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

179. Prudential is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Messersmith.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

180.    JPMorgan is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Messersmith.

181.    Under 29 U.S.C. § 1104(a), Prudential and JPMorgan are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

182.    Under ERISA, which is founded in trust principles, Prudential and JPMorgan are required to administer claims in the best interests of beneficiaries and participants as part of their fiduciary duties.

183.    In multiple ways throughout the administration of Mr. Messersmith's claim, Prudential and JPMorgan breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

184.    Prudential's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Prudential's claims handling was discharged imprudently and caused Mr. Messersmith serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

185.    To the extent that Prudential's denial of benefits caused Mr. Messersmith harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

186.    On information and belief, Prudential instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

187.    Mr. Messersmith is informed and believes that Prudential's employees are trained in administering claims in the best interests of Prudential, not Plan participants.

188.    Prudential demonstrated bias and malice against Mr. Messersmith through its employees. Instead of fully and fairly reviewing the medical evidence, Prudential unreasonably denied Mr. Messersmith's claim based on unreliable evidence.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

189.     Prudential's failure to act prudently and in the best interests of Mr. Messersmith is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Prudential's conduct as it relates to Mr. Messersmith's claim.

190.     Mr. Messersmith is informed and believes that Prudential has targeted claims under the Plan, including Mr. Messersmith's, which is a breach of fiduciary duty.

191.     On information and belief, Prudential breached its fiduciary duty to Mr. Messersmith by terminating his claim in an effort to avoid its financial liability.

192.     JPMorgan breached its fiduciary duty by failing to perform the fiduciary duties imposed by ERISA, including having plan documents that meet the statutory requirement, failing to monitor Prudential's claim handling, failing to insure Prudential performed its duties under the Plan, and failing to take prudent or appropriate corrective action.

193.     Based on the facts of this case, Mr. Messersmith has "other equitable relief" available to him in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Messersmith whole for his losses from Prudential's and JPMorgan's breaching conduct.

194.     The Court has broad discretion to fashion appropriate relief to make Mr. Messersmith whole and should mold the relief necessary to protect the rights of the participants.

195.     Mr. Messersmith is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

196.     He is entitled to enjoin any act or practice by Prudential and JPMorgan that violate ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

197.    Prudential was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Messersmith's benefits for its own profit.

198.    Prudential engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

199.    JPMorgan failed to perform its fiduciary duties under ERISA and the Plan.

200.    Prudential acted with malice and in bad faith against Mr. Messersmith, which constitutes a violation of its fiduciary obligations.

201.    ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Messersmith by Prudential's and JPMorgan's breach of fiduciary duty violations.

202.    As a direct and proximate result of the breaches of fiduciary duty, Mr. Messersmith suffered actual, *significant* financial harm and has incurred financial expense.

203.    Mr. Messersmith is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

204.    Pursuant to 29 U.S.C. § 1132(g), Mr. Messersmith is entitled to recover his attorneys' fees and costs incurred herein.

**COUNT III**
**(Statutory Penalties for Failure to Provide Plan Documents)**
**(JPMorgan)**

205.    All previous paragraphs are incorporated by reference.

206.    Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails to comply with a request for any information which such administer is required by this subchapter to furnish to a participant or beneficiary… may in the court's discretion be personally liable to such participant or beneficiary."

207.    Under 29 U.S.C. §1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

208.    The disclosure requirements of ERISA are not empty suggestions for fiduciaries. The disclosure requirements amount to specific guidelines imposed for the

-23-

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

purpose of ensuring that plan participants, can follow and gauge the availability and character of ERISA plans, including the very structure of the benefit plan itself. Without adequate disclosure, a participant cannot know or enforce his rights to benefits or anticipate alterations in benefits under the Plan.

209.    The Plan Administrator is liable to Mr. Messersmith for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, *et. seq.*

210.    Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for each day that the Plan Administrator failed to provide a complete and proper disclosure Plan documents.

211.    Penalties began to accrue thirty (30) days after the date a written request to the Plan Administrator was made for plan documents.

212.    Mr. Messersmith requested documents on August 4, 2016.

213.    Penalties began to accrue on September 3, 2016.

214.    Mr. Messersmith is entitled to penalties, as well as interest, costs, and attorneys' fees.

215.    Penalties continue to accrue under ERISA until JPMorgan properly discloses requested documents.

**WHEREFORE**, on all claims, Mr. Messersmith prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.    All past LTD benefits under the terms of the Plan;

B.    Clarifying and determining Mr. Messersmith's rights to future benefits under the terms of the Plan;

C.    For any other benefits Mr. Messersmith may be entitled to receive under the Plan due to his disability;

D.    Any statutory penalties available as a result of violations of ERISA;

E.    All other equitable relief that is proper as a result of Prudential's and JPMorgan's breaches of fiduciary duties;

F.    An award of Mr. Messersmith's attorneys' fees and costs incurred herein;

-24-

G.      An award of prejudgment interest on benefits and damages at the highest

legal rate until paid; and

H.      For such and further relief as the Court deems just, equitable, and reasonable.


Dated this 22nd day of February 2017.

OBER & PEKAS, PLLC


By: *s/ Kevin Koelbel*
       Erin Rose Ronstadt
       Kevin Koelbel
       Attorneys for Plaintiff